ORTIZ & ORTIZ, LLP                                    Hearing Date:  November 16, 2015
32-72 Steinway Street, Suite 402                      Hearing Time:  2:00 p.m.
Astoria, New York 11103
Tel. (718) 522-1117
Fax (718) 596-1302
Norma E. Ortiz
email@ortizandortiz.com
*Attorneys for Creditor Jose Jaquez*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

In re:                                                            Chapter 11

MONTEZUMA MEXICAN RESTAURANT INC.,                                Case No. 15-10365 (MG)

                              Debtor.
------------------------------------------------------------------x

### RESPONSE TO DEBTOR'S MOTION TO DETERMINE SECURED STATUS OF CLAIM OF JOSE JAQUEZ AND SEEKING TO RECLASSIFY AND REDUCE PROOF OF CLAIM NO. 8

        Jose Jaquez ( the "Creditor"), by and through his attorneys Ortiz & Ortiz, LLP, hereby

responds to the Debtor's Motion to Determine the Secured Status of his claim and seeking to

reclassify and reduce Proof of Claim No. 8 (the "Motion"), as follows:

### BACKGROUND

        1.      The Creditor believes that on or about January 27, 2010, Montezuma Mexican

Restaurant, Inc. (the "Debtor"), Magdalena Dominguez, doing business as Cuatemoc Inc., and

Moctezuma Restaurant entered into a secured financing agreement with Jose Cepeda, doing

business as JAC Captial Funding LLC (the "2010 Financing Agreement").  Magdalena

Dominguez is the Debtor's president.  See Declaration of Jose Jaquez attached hereto as Exhibit

A.

        2.      The Creditor believes that on April 5, 2010, a UCC Financing Statement was filed

with New York State by Maximo A. Figurero listing JAC Capital Funding LLC as the secured

party and the Debtor as an additional debtor alongside Cuatemoc Inc. ( the "2010 UCC

Financing Statement").

3.      The 2010 UCC Financing Statement states that it covers the following collateral:

All now or hereafter acquired: equipment, fixtures, inventory, contrct (sic) rights,
including right to lease and proceeds including those of fire insurance and
inventory, Debtor has no right to sell any collateral except inventory in ordinary
course of business.  This is a purchase money security interest for 117-03 Hillside
Avenue, Richmond Hills, NY 11418 and 2690 Webb Avenue, a.k.a. 119 West
Kingsbridge Road, Bronx, New York 10468.

4.      On April 13, 2010, Jose Cepeda assigned the 2010 Financing Agreement to the

Creditor.

5.      The Creditor believes that on December 2, 2011, a UCC Financing Statement

changing the party name from Moctezuma Restaurant to the Debtor's name was filed with New

York State.

6.      The Creditor believes that on July 8, 2013, JAC Capital Funding LLC filed an

amendment to its 2010 UCC Financing Statement with New York State to change its name to the

Creditor's name.

7.      In February 2013, the Debtor signed a collateral assignment of lease to the

Creditor ("2013 Lease Assignment").  The 2013 Lease Assignment granted the Creditor the

Debtor's "right, title, and interest in a) the Lease, and b) the security deposit, if any, stated in the

Lease.  To take effect should assignor default on loan documents executed with assignee."

8.      In May 2013, the Debtor and the Creditor entered into a modification of the 2010

Financing Agreement to fix the amount due as of May 2013 and extend the period of repayment

(the "2013 Financing Agreement").  The Debtor and Creditor fixed the amount due as of May

2013 as $710,000.  The payment schedules called for monthly payments of $8,521.19 until 2020.

In June 2020, the Debtor agreed to make a balloon payment of $524,289.87.

9.    At the same time the parties entered into the 2013 Financing Agreement, the

Debtor and the Creditor entered into a security agreement.

10.    The 2013 Security Agreement granted the Creditor a lien on "all of Debtor's

right, title and interest io the Debtor's assets, including the Leasehold, located at: 119 West

Kingsbridge Road, Bronx, New York 10468, (see Exhibit A) attached hereto and made a part

hereof."  The Exhibit A attached to the security agreement provides:

"Included Assets" as defined below:

More specifically:

(a)    all machinery, equipment, tools, furnishings, leasehold,
improvements, goods and any rights under lease to such
machinery, furnishings and equipment and those items of personal
property and other tangible personal property.

(b)    Inventory

(c)    all other assets of the Seller, except those excluded under 1.1.2.

(d)    Leasehold.

11.    Upon information and belief, the Debtor made payments to the Creditor through

2014.

12.    On February 20, 2015, the Debtor filed a voluntary petition under chapter 11 of

the Bankruptcy Code.

13.    The Debtor listed the Creditor as secured on Schedule D, and listed the Claim as

undisputed.  The Debtor listed its equipment, inventory, and lease as the collateral securing the

Creditor's claim.

14.    On May 15, 2015, the Creditor filed his proof claim against the Debtor in the

amount of $720,000 and asserted that he is a secured creditor (the "Claim"). The Claim was supported by the following documents: the 2013 Security Agreement, the 2013 Financing Statement, and the Collateral Assignment of Lease.

## RESPONSE

15.    The Debtor has moved to reclassify the Claim as unsecured and seeks to reduce the amount of the claim. The grounds for seeking to reclassify the claim are (a) the proof of claim lacks adequate documentation and contains a typographical error, and (b) the tax claims exceed the value of the assets, rendering the Claim unsecured. The Debtor asserts that any amendment to the Claim would be untimely and opposed by it. The grounds for reducing the amount of the claims are based upon a dispute over the amounts paid by the Debtor to the Creditor.

A.    The Claim Complies with Rule 3001

16.    In support of its contention that the Claim is deficient, the Debtor asserts that the Claim (1) incorrectly claims an interest in real estate instead of personal property, (2) fails to set forth the facts necessary to support the claim; and (3) is supported by documents that are not signed by the Creditor. The Debtor asserts that the Creditor may not amend his claim because the deadline for filing proofs of claim has passed and the Debtor would oppose the amendment.

17.    The Creditor asserts that the Claim complies with the dictates of Rule 3001, and the Claim should not be disallowed on the grounds of inadequate support. Rule 3001 provides in relevant part that when a claim is based upon a writing, it must be supported by that writing. In addition, when the claim is secured in nature, the claim must be supported by evidence that the security interest has been perfected.

4

18.    The Bankruptcy Code defines a security interest as a lien created by an agreement.  11 U.S.C. § 101(51).  "In determining whether a creditor's security interest or judgment lien is perfected, courts look to state law.  In New York, a lien created by an agreement typically takes the form of ... a security agreement governed by Article 9 of the New York Uniform Commercial Code with respect to a debtor's personal property."  In re Ideal Mortg. Bankers, Ltd., 2015 Bankr. LEXIS 3475 * 38 (Bankr. E.D.N.Y. Oct. 14, 2015) (citations and quotations omitted).

19.    The Claim was supported by the 2013 Security Agreement, the Collateral Assignment of the Lease, and the 2013 UCC Financing Statement containing a filing number indicating it was filed with the State of New York.  The Security Agreement, in Paragraph 2, clearly sets forth the collateral securing the claim as all of the Debtor's assets, including its leasehold.  Although the Creditor could have added additional documents to support its claim, the secured nature of its claim was not disputed by the Debtor in its Schedule D.  As such, under these circumstances, the Claim complied fully with Rule 3001 by containing the agreement evidencing the debt, the amount of the debt, and proof that a financing statement had been filed and perfected under applicable state law.

B.    An Amendment Correcting a Deficiency in the Claim, if Necessary, is Permissible

20.    Prior to the hearing on the objection, the Creditor intends to file an amended claim

that shall simply (1) correct the typographical error claiming an interest in real estate, as opposed to personal property, and (2) contain additional supporting documentation.  Such an amendment would be timely and wholly appropriate under the circumstances of this case.

5

21.     "Amendments should be freely allowed, but post-bar date amendments are subject

to "careful scrutiny to assure that there was no attempt to file a new claim under the guise of an

amendment." In re Waterscape Resort, LLC, 520 B.R. 424, 434 (Bankr. S.D.N.Y 2014) (citing

Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 133 (2d

Cir. 2005).  In Midland Cogeneration, the Second Circuit adopted a two-part test for determining

whether an amendment of a claim should be permitted after a bar date: it found that the

amendment should relate back to the original timely-filed claim, and the amendment should not

be inequitable and prejudice other parties.  Id. at 133.  The Second Circuit found that an

amendment relates back to the original claim if it cures a defect of form in the original claim,

describes the original claim with greater particularity, or pleads a new theory of recovery on the

facts set forth in the original claim.  Id.

22.     The Court discussed the Midland Standard test in In re Residential Capital LLC,

513 B.R. 856 (Bankr. S.D.N.Y. 2014).  In that case, a creditor filed a proof of claim against the

Debtor mortgage company known as GMACM Mortgage, LLC.  The debtor objected to the

claim.  In response to the objection, the creditor sought to raise a brand new theory of liability

against the debtor that was based upon the allegation that mortgage documents were counterfeit.

Applying the Midland Standard case test to the facts before it, the Court found that the creditor

was attempting to assert a new theory of liability that did not relate back to the original claim.

The creditor's attempt to assert this claim was denied.

23.     In this case, it is clear that any amendment of the Claim would serve to relate

back

to cure a perceived defect in the Claim, and nothing else.  The amendment shall simply (a)

indicate that the claim is secured by personal, and not real, property, and (b) provide further documentation to support the Claim. Moreover, since the Claim (a) clearly sets forth its nature, (b) the amount sought, (c) the bases for its security interest, and (d) was listed as secured in the Debtor's schedules, there are no grounds for asserting that permitting the amendment would prejudice the Debtor or other creditors.

C. <u>The Debtor has Failed to Meet its Burden of Proof and the Objection Should be Denied</u>

24.     The Court has found that

> "Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." If the objector does not "introduce[]evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim."

<u>In re Residential Capital, LLC</u>, 2015 Bankr. LEXIS 2581, *45-46 (Bankr. S.D.N.Y. Aug. 4, 2015) (citations and quotations omitted). <u>Accord</u> <u>In re Arcapita Bank B.S.C.(c)</u>, 508 B.R. 814, 817 (S.D.N.Y. 2014).

The Debtor has not provided the Court with any evidence that overcomes the presumption that the Claim is valid or that the Creditor did not properly perfect his security interest in the Debtor's assets. Moreover, by simply attaching proofs of claim to its objection, the Debtor has not demonstrated that liens obtained by the taxing authorities were perfected prior to the Creditor's security interest. The Debtor did not provide any evidence that its assets are not sufficient to satisfy all or a portion of the secured or priority claims.

25.     If the Court does not deny the Debtor's objection, the Creditor respectfully requests that the Court treat the objection as a contested matter and enter a discovery schedule so

that the parties may obtain the information they seek to resolve the issues in dispute.

WHEREFORE, the Creditor requests that the Court deny the Objection, and grant such

other and further relief as the Court deems just.

Dated: November 8, 2015
        Queens, New York

                                    */s/ Norma E. Ortiz*
                                    Norma E. Ortiz
                                    ORTIZ & ORTIZ, LLP
                                    32-72 Steinway Street, Suite 402
                                    Astoria, New York 11103
                                    Tel. (718) 522-1117
                                    Fax (718) 596-1302
                                    *Attorneys for Creditor Jose Jaquez*

# Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

In re:                                                    Chapter 11

MONTEZUMA MEXICAN RESTAURANT INC.,                        Case No. 15-10365 (MG)

                          Debtor.
-------------------------------------------------------------------x

## DECLARATION OF JOSE JAQUEZ

Jose Jaquez, being duly sworn, hereby declares as follows:

1.      Based upon my review of records in my file, and my conversations with my

corporate counsel, I sate the following:  On or about January 27, 2010, Montezuma Mexican

Restaurant, Inc. (the "Debtor"), Magdalena Dominguez, doing business as Cuatemoc Inc., and

Moctezuma Restaurant entered into a secured financing agreement with Jose Cepeda, doing

business as JAC Capital Funding LLC (the "2010 Financing Agreement").

2.      On April 5, 2010, a UCC Financing Statement was filed with New York State by

Maximo A. Figurero listing JAC Capital Funding LLC as the secured party and the Debtor as an

additional debtor alongside Cuatemoc Inc. ( the "2010 UCC Financing Statement").

3.      On April 13, 2010, Jose Cepeda assigned the 2010 Financing Agreement to me.

4.      On December 2, 2011, a UCC Financing Statement changing the party name from

Moctezuma Restaurant to the Debtor's name was filed with New York State.

5.      On July 08, 2013, JAC Capital Funding LLC filed an amendment to its 2010 UCC

Financing Statement with New York State to change the secured party and to replace its name

with mine.

6.      In February 2013, the Debtor and I signed a collateral assignment of lease to me

("2013 Lease Assignment").  The 2013 Lease Assignment granted me the Debtor's "right, title,

and interest in a) the Lease, and b) the security deposit, if any, stated in the Lease.  This lease assignment served as additional protection against the Debtor's default, since I already maintained a security interest in the lease.

7.    In May 2013, the Debtor and I entered into modification of the 2010 Financing Agreement to fix the amount due and extend the period of repayment (the "2013 Financing Agreement").  The Debtor and I  fixed the amount due as of May 2013 as $710,000.  The payment schedules called for monthly payments of $8,521.19 until 2020.  In June 2020, the Debtor agreed to make a balloon payment of $524,289.87.  At the same time, the Debtor and I entered into a separate security agreement.

8.    The 2013 security agreement, once again, granted me a lien on "all of Debtor's right, title and interest io the Debtor's assets, including the Leasehold, located at: 119 West Kingsbridge Road, Bronx, New York 10468.

9.    The Debtor made payments to me until 2014.

10.    On May 15, 2015, I filed my proof claim against the Debtor in the amount of $720,000 (the "Claim").

11.    The Claim was supported by the following documents:  the 2013 Security Agreement, the 2013 Financing Statement, and the Collateral Assignment of Lease.  I did not attach all of the other documents to the Claim, because I was told there was no dispute by the Debtor that I held a lien on all of its assets.

12.    I intend to update my Claim to reflect the exact amount owed by the Debtor at the time of its bankruptcy filing, and provide the Court with the additional documents referred to

herein.  Attached as Exhibit A to this declaration is a copy of my supporting documents.

I hereby declare that the foregoing is accurate and true to the best of my knowledge and belief.


Dated: November 10, 2015
      New York, New York

_/s/Jose Jaquez_____
Jose Jaquez

# Exhibit A

THIS INDENTURE, made the 3 day of      May 2013

**BETWEEN**    JOSE JAQUEZ with address of c/o    Maximo Figueredo, Esq.
37-31 76th Street
Jackson Heights, New York 11372

party of the first part, and

MONTEZUMA MEXICAN RESTAURANT INC. with address of
119 West Kingsbridge Road
Bronx, New York 10468

party of the second part,

**WHEREAS,** the party of the first part is the holder **of** the following Security Agreement and of the note  secured thereby:

Agreement dated the 27th day of January, 2010, made by MAGDALENA DOMINGUEZ DBA "CUATEMOC INC., MOCTEZUMA RESTAURANT. MOCTEZUMA MEXICAN RESTAURANT  to JOSE CEPEDA DBA JAC CAPITAL FUNDING LLC. which was assigned to JOSE JAQUEZ by assignment dated April 13, 2010 now a first lien upon premises known as 119 West Kingsbridge Road, Bronx, NY 10468, which was assigned by Jose Cepeda to Jose Jaquez pursuant to written agreement and/or assignment between them.

**WHEREAS** the parties have agreed to modify and extend the time for payment it is,

**NOW THEREFORE** in consideration of Ten ($10.00) dollars paid by said party of the second part and other valuable consideration, the party of the first part hereby agrees to:

1.    Correction of ~~secured~~ Second party to Montezuma Mexican Restaurant Inc.

2.    The parties have agreed the principal owed as of May 2013 is $710,000.00. Interest shall accrue at the rate of 12% per annum commencing May 1, 2013.

3.    The parties will execute a new Note and Security Agreement.

1

4.    The debtor will also deliver to Creditor a duly executed Collateral Assignment of Lease with the written consent of the Landlord.

5.    The debtor shall pay the secured party pursuant to the terms of the Promissory Note attached hereto as Exhibit "A.

6.    Magdalena Dominguez and Marcelino Dominguez shall personally guaranty the Promissory Note.

7.    The Debtor represents that it is duly authorized, in accordance with its Certificate of Incorporation and By-Laws, and by its Board of Directors, to enter into and perform its obligations under this Agreement and to carry out the transactions contemplated hereby herein.

8.    The Secured Party hereby represents to Debtor that
    a)    Secured Party's only interest is to have the Debtor pay, and the Secured Party to collect, the monies due pursuant to the promissory note;

    b)    he shall not, nor shall he direct, permit nor authorize any of his employees, agents, representatives, successors, assigns, etc., to interefere with the Debtor's business, take-over Debtor's business, manage Debtor's business (unless pursuant to a Court order), or in any other manner operate the Debtor's business, nor shall he nor any of his employees, agents, representatives, successors, assigns., etc., molest nor harass the Debtor, its employees, agents, guarantors, nor customers.  As such the Debtor is not required to employ secured party, nor any of his employees, agents, representatives, successors, assigns, etc.

9.    The monthly payment shall be due on the 15th day of each month, and the Secured Party shall receive payment from Debtor during normal working business hours at the debtor's business.

10.    Secured Party shall not assign his interest to any third party without the written consent of the Debtor unless said assignment is pursuant to a Court order directing otherwise.

11.    Secured Party hereby represents and acknowledges that any legal actions or remedies that it may that Secured Party will not use the services nor permit or

2

request Jose Cepeda to act on his behalf.

12.    The parties agree to execute and deliver all other instruments and take all other action as the other party may reasonably request from time to time, in order to effectuate the transactions provided for herein.

13.    Any and all notices or other communications required or permitted to be given under any of the provisions of this Agreement shall be in writing and shall be deemed to have been given upon the mailing thereof by first class registered or certified mail, return receipt requested, postage pre-paid, or overnight courier service providing proof of delivery, addressed to the parties herein, and with copies to their respective attorneys as follows:

    a)    party of the first part, Maximo Figueredo, Esq., 37-31 76th Street, Jackson Heights, New York 11372; and/or

    b)    party of the second party, Codelia & Socorro, P.C., 778 Castle Hill Avenue, Bronx, New York 10473

    or such other address as the parties may designate by written notice.

14.    Neither this agreement nor any provision hereof shall be modified, changed, discharged, or terminated except by an instrument in writing signed by the party against whom the enforcement of any modification, change or discharge or termination is sought.

15.    The failure of either party to insist upon the performance of any obligation to be performed by the other party hereunder shall not be deemed to be a waiver thereof of any preceding or succeeding breach thereof or of any obligation. No provision of this Contract may be waived except by a writing signed by the party waiving any such provision hereof. The waiver of any breach of this Contract shall not be deemed to be a waiver of any preceding or succeeding breach of the same obligation or of any other obligation to be performed hereunder. No extensions of time for the performance of any obligations or acts shall be deemed or construed as an extension of the time for the performance of any other obligations or acts.

16.    If any provision of this Contract or the application thereof to any party or circumstance shall to any extent be invalid or unenforceable, the remaining provisions hereof, or the application or such provision to parties or circumstances other than those as to which it is invalid or unenforceable, shall not be affected

3

thereby and shall continue in full force and effect.

17.   Except as otherwise expressly provided herein, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors and assigns.

18.   This Agreement shall be governed by and construed in accordance with the law of the State of New York without regard to principles of conflicts of laws.

19.   This Agreement may be executed in any number of counterparts, each of which shall be deemed to be one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

_____
JOSE JAQUEZ

**MONTEZUMA MEXICAN RESTAURANT INC.**

BY:  _____
MAGDALENA DOMINGUEZ, Pres.

_____
MAGDALENA DOMINGUEZ, Individually

_____
MARCELINO DOMINGUEZ, Individually

4

written agreement to be signed between the parties, wherein principal and interest will be paid to the Secured Party by Debtor for a period of no less than the extension term of lease or new location term of lease, and an interest rate of no more than twelve (12%) percent.

For value received, the undersigned, hereby forever waives presentment, demand, dishonor of the within notice and the undersigned guarantees the payment of said note at maturity and consents without notice, to any and all extensions of time or terms of payment by holder of said note.

**THIS NOTE MAY BE PAID IN WHOLE OR IN PART WITHOUT PENALTY.**

MONTEZUMA MEXICAN RESTAURANT INC.

By: _____

MAGDALENA DOMINGUEZ, Pres.

## GUARANTEE

The undersigned hereby guarantee payment of the within promissory note to the Payee thereof. This Guarantee is irrevocable, continuing, absolute, and unconditional and may be preceded upon the default of the Maker hereof without prior notice to the undersigned as Guarantor and without prior action or proceedings against the Maker.

WITNESS the hand and seal of the undersigned this __2__ day of May, 2013

_____

MAGDALENA DOMINGUEZ

_____

MARCELINO DOMINGUEZ

2

# PROMISSORY NOTE

**$710,000.00**                                        **May 2, 2013**

**MONTEZUMA MEXICAN RESTAURANT INC.,** with offices at 119 West Kingsbridge Road, Bronx New York 10468, promises to pay to the order of **JOSE JAQUEZ** c/o Maximo A. Figueredo, Esq., with offices at 37-31 76th Street, Jackson Heights, New York 11372, the sum of **SEVEN HUNDRED TEN THOUSAND ($710,000.00) dollars** payable as follows:

Commencing on June 15, 2013, the Debtor shall pay the sum of EIGHT THOUSAND FIVE HUNDRED TWENTY ONE ($8,521.29) dollars and twenty nine cents, which includes principal and interest at the rate of twelve (12%) percent per annum, and the like sum monthly thereafter for eighty four (84) consecutive months when the remaining principal due together with accrued interest shall be come due and payable on June 15, 2020.

**THIS IS A BALLOON NOTE. THE MONTHLY PAYMENTS ARE BASED ON AN AMORTIZATION SCHEDULE (ATTACHED HERETO) OF 180 MONTHS, BUT THE REMAINING BALANCE ON THE NOTE BECOMES DUE AND PAYABLE ON JUNE 15, 2020. THE PRINCIPAL REMAINING UNPAID AT MATURITY IS $524,289.87.**

However, notwithstanding that the monthly sum is $8,521.29, in the event that the Debtor pays to monthly sums less than Five Thousand Five Hundred ($5,500.00) to the Secured Party, then the Debtor will not be in material default of this note, and the principal remaining at maturity date of June 15, 2020 will be recalculated for pay-off amount due to Secured Party.

If the Debtor fails by making monthly payments of less than the amounts stated above, for more than sixty (60) days, and no extension agreement for said payments has been executed between the parties, then the Debtor will be in material default of this Promissory Note, and after written notice to debtor by certified mail, return receipt requested, with a copy of said notice to debtor's attorney by regular mail, and demand to cure continues for a period of ten (10) days, then, at the option of the holder of said note, the entire unpaid balance of principal, plus interest at the rate of twenty four (24%) percent per annum from date of default until date of payment, shall forthwith become due and payable. The failure to assert this right shall not be deemed a waiver thereof.

The holder of this note shall be entitled to reasonable attorney's fees in the event of a default and a collection action is commenced against Debtor.

In the event that prior to the balloon date of this note, the Debtor obtains an extension of lease for premises 119 West Kingsbridge Road, Bronx, New York, or the Debtor transfers to a new location, then the parties agree that the balloon note payment due on June 15, 2020 will be extended by a new

1

written agreement to be signed between the parties, wherein principal and interest will be paid to the Secured Party by Debtor for a period of no less than the extension term of lease or new location term of lease, and an interest rate of no more than twelve (12%) percent.

For value received, the undersigned, hereby forever waives presentment, demand, dishonor of the within notice and the undersigned guarantees the payment of said note at maturity and consents without notice, to any and all extensions of time or terms of payment by holder of said note.

**THIS NOTE MAY BE PAID IN WHOLE OR IN PART WITHOUT PENALTY.**

MONTEZUMA MEXICAN RESTAURANT INC.

By: _____
        MAGDALENA DOMINGUEZ, Pres.


GUARANTEE

The undersigned hereby guarantee payment of the within promissory note to the Payee thereof. This Guarantee is irrevocable, continuing, absolute, and unconditional and may be preceded upon the default of the Maker hereof without prior notice to the undersigned as Guarantor and without prior action or proceedings against the Maker.

WITNESS the hand and seal of the undersigned this ___2___ day of May, 2013

_____
MAGDALENA DOMINGUEZ

_____
MARCELINO DOMINGUEZ

2

Budgets, Cash Flow & Loan
01/01/90           L O A N   P A Y M E N T   S C H E D U L E

Description:
Frequency of payments: MONTHLY
# of payments:180
Principal amount:   710,000.00
Interest rate (percent): 12.0000
Payment:     8,521.19
Loan calculation method: SIMPLE

Total interest over term:   823,815.81
Total amount paid over term: 1,533,815.81

| # | Payment Date | Amount | Portion of payment Principal | Interest | Principal balance | Date paid |
|---|---|---|---|---|---|---|
| 1 | 06/01/13 | 8,521.19 | 1,421.19 | 7,100.00 | 708,578.81 | _____ |
| 2 | 07/01/13 | 8,521.19 | 1,435.40 | 7,085.79 | 707,143.41 | _____ |
| 3 | 08/01/13 | 8,521.19 | 1,449.76 | 7,071.43 | 705,693.65 | _____ |
| 4 | 09/01/13 | 8,521.19 | 1,464.25 | 7,056.94 | 704,229.40 | _____ |
| 5 | 10/01/13 | 8,521.19 | 1,478.90 | 7,042.29 | 702,750.50 | _____ |
| 6 | 11/01/13 | 8,521.19 | 1,493.69 | 7,027.50 | 701,256.81 | _____ |
| 7 | 12/01/13 | 8,521.19 | 1,508.62 | 7,012.57 | 699,748.19 | _____ |
| Subtotal: 1913 | | 59,648.33 | 10,251.81 | 49,396.52 | | |
| 8 | 01/01/14 | 8,521.19 | 1,523.71 | 6,997.48 | 698,224.48 | _____ |
| 9 | 02/01/14 | 8,521.19 | 1,538.95 | 6,982.24 | 696,685.53 | _____ |
| 10 | 03/01/14 | 8,521.19 | 1,554.33 | 6,966.86 | 695,131.20 | _____ |
| 11 | 04/01/14 | 8,521.19 | 1,569.88 | 6,951.31 | 693,561.32 | _____ |
| 12 | 05/01/14 | 8,521.19 | 1,585.58 | 6,935.61 | 691,975.74 | _____ |
| 13 | 06/01/14 | 8,521.19 | 1,601.43 | 6,919.76 | 690,374.31 | _____ |
| 14 | 07/01/14 | 8,521.19 | 1,617.45 | 6,903.74 | 688,756.86 | _____ |
| 15 | 08/01/14 | 8,521.19 | 1,633.62 | 6,887.57 | 687,123.24 | _____ |
| 16 | 09/01/14 | 8,521.19 | 1,649.96 | 6,871.23 | 685,473.28 | _____ |
| 17 | 10/01/14 | 8,521.19 | 1,666.46 | 6,854.73 | 683,806.82 | _____ |
| 18 | 11/01/14 | 8,521.19 | 1,683.12 | 6,838.07 | 682,123.70 | _____ |
| 19 | 12/01/14 | 8,521.19 | 1,699.95 | 6,821.24 | 680,423.75 | _____ |
| Subtotal: 1914 | | 102,254.28 | 19,324.44 | 82,929.84 | | |
| 20 | 01/01/15 | 8,521.19 | 1,716.95 | 6,804.24 | 678,706.80 | _____ |
| 21 | 02/01/15 | 8,521.19 | 1,734.12 | 6,787.07 | 676,972.68 | _____ |
| 22 | 03/01/15 | 8,521.19 | 1,751.46 | 6,769.73 | 675,221.22 | _____ |
| 23 | 04/01/15 | 8,521.19 | 1,768.98 | 6,752.21 | 673,452.24 | _____ |
| 24 | 05/01/15 | 8,521.19 | 1,786.67 | 6,734.52 | 671,665.57 | _____ |
| 25 | 06/01/15 | 8,521.19 | 1,804.53 | 6,716.66 | 669,861.04 | _____ |
| 26 | 07/01/15 | 8,521.19 | 1,822.58 | 6,698.61 | 668,038.46 | _____ |
| 27 | 08/01/15 | 8,521.19 | 1,840.81 | 6,680.38 | 666,197.65 | _____ |
| 28 | 09/01/15 | 8,521.19 | 1,859.21 | 6,661.98 | 664,338.44 | _____ |
| 29 | 10/01/15 | 8,521.19 | 1,877.81 | 6,643.38 | 662,460.63 | _____ |
| 30 | 11/01/15 | 8,521.19 | 1,896.58 | 6,624.61 | 660,564.05 | _____ |
| 31 | 12/01/15 | 8,521.19 | 1,915.55 | 6,605.64 | 658,648.50 | _____ |

Budgets, Cash Flow & Loan                                      PAGE 002
01/01/90
                  L O A N   P A Y M E N T   S C H E D U L E

| # | Date | Amount | Principal | Interest | Principal balance | Date paid |
|---|------|--------|-----------|----------|-------------------|-----------|
| Subtotal: 1915 | | 102,254.28 | 21,775.25 | 80,479.03 | | |
| 32 | 01/01/16 | 8,521.19 | 1,934.71 | 6,586.48 | 656,713.79 | _____ |
| 33 | 02/01/16 | 8,521.19 | 1,954.05 | 6,567.14 | 654,759.74 | _____ |
| 34 | 03/01/16 | 8,521.19 | 1,973.59 | 6,547.60 | 652,786.15 | _____ |
| 35 | 04/01/16 | 8,521.19 | 1,993.33 | 6,527.86 | 650,792.82 | _____ |
| 36 | 05/01/16 | 8,521.19 | 2,013.26 | 6,507.93 | 648,779.56 | _____ |
| 37 | 06/01/16 | 8,521.19 | 2,033.39 | 6,487.80 | 646,746.17 | _____ |
| 38 | 07/01/16 | 8,521.19 | 2,053.73 | 6,467.46 | 644,692.44 | _____ |
| 39 | 08/01/16 | 8,521.19 | 2,074.27 | 6,446.92 | 642,618.17 | _____ |
| 40 | 09/01/16 | 8,521.19 | 2,095.01 | 6,426.18 | 640,523.16 | _____ |
| 41 | 10/01/16 | 8,521.19 | 2,115.96 | 6,405.23 | 638,407.20 | _____ |
| 42 | 11/01/16 | 8,521.19 | 2,137.12 | 6,384.07 | 636,270.08 | _____ |
| 43 | 12/01/16 | 8,521.19 | 2,158.49 | 6,362.70 | 634,111.59 | _____ |
| Subtotal: 1916 | | 102,254.28 | 24,536.91 | 77,717.37 | | |
| 44 | 01/01/17 | 8,521.19 | 2,180.07 | 6,341.12 | 631,931.52 | _____ |
| 45 | 02/01/17 | 8,521.19 | 2,201.87 | 6,319.32 | 629,729.65 | _____ |
| 46 | 03/01/17 | 8,521.19 | 2,223.89 | 6,297.30 | 627,505.76 | _____ |
| 47 | 04/01/17 | 8,521.19 | 2,246.13 | 6,275.06 | 625,259.63 | _____ |
| 48 | 05/01/17 | 8,521.19 | 2,268.59 | 6,252.60 | 622,991.04 | _____ |
| 49 | 06/01/17 | 8,521.19 | 2,291.28 | 6,229.91 | 620,699.76 | _____ |
| 50 | 07/01/17 | 8,521.19 | 2,314.19 | 6,207.00 | 618,385.57 | _____ |
| 51 | 08/01/17 | 8,521.19 | 2,337.33 | 6,183.86 | 616,048.24 | _____ |
| 52 | 09/01/17 | 8,521.19 | 2,360.71 | 6,160.48 | 613,687.53 | _____ |
| 53 | 10/01/17 | 8,521.19 | 2,384.31 | 6,136.88 | 611,303.22 | _____ |
| 54 | 11/01/17 | 8,521.19 | 2,408.16 | 6,113.03 | 608,895.06 | _____ |
| 55 | 12/01/17 | 8,521.19 | 2,432.24 | 6,088.95 | 606,462.82 | _____ |
| Subtotal: 1917 | | 102,254.28 | 27,648.77 | 74,605.51 | | |
| 56 | 01/01/18 | 8,521.19 | 2,456.56 | 6,064.63 | 604,006.26 | _____ |
| 57 | 02/01/18 | 8,521.19 | 2,481.13 | 6,040.06 | 601,525.13 | _____ |
| 58 | 03/01/18 | 8,521.19 | 2,505.94 | 6,015.25 | 599,019.19 | _____ |
| 59 | 04/01/18 | 8,521.19 | 2,531.00 | 5,990.19 | 596,488.19 | _____ |
| 60 | 05/01/18 | 8,521.19 | 2,556.31 | 5,964.88 | 593,931.88 | _____ |
| 61 | 06/01/18 | 8,521.19 | 2,581.87 | 5,939.32 | 591,350.01 | _____ |
| 62 | 07/01/18 | 8,521.19 | 2,607.69 | 5,913.50 | 588,742.32 | _____ |
| 63 | 08/01/18 | 8,521.19 | 2,633.77 | 5,887.42 | 586,108.55 | _____ |
| 64 | 09/01/18 | 8,521.19 | 2,660.10 | 5,861.09 | 583,448.45 | _____ |
| 65 | 10/01/18 | 8,521.19 | 2,686.71 | 5,834.48 | 580,761.74 | _____ |
| 66 | 11/01/18 | 8,521.19 | 2,713.57 | 5,807.62 | 578,048.17 | _____ |
| 67 | 12/01/18 | 8,521.19 | 2,740.71 | 5,780.48 | 575,307.46 | _____ |
| Subtotal: 1918 | | 102,254.28 | 31,155.36 | 71,098.92 | | |

| 68 | 01/01/19 | 8,521.19 | 2,768.12 | 5,753.07 | 572,539.34 | _____ |

Budgets, Cash Flow & Loan                                              PAGE 003
01/01/90
                 L O A N   P A Y M E N T   S C H E D U L E

```
   ---------Payment---------   --Portion of payment---   Principal      Date
   #    Date        Amount     Principal      Interest   balance        paid
```

| # | Date | Amount | Principal | Interest | Principal balance | Date paid |
|---|------|--------|-----------|----------|-------------------|-----------|
| 69 | 02/01/19 | 8,521.19 | 2,795.80 | 5,725.39 | 569,743.54 | _____ |
| 70 | 03/01/19 | 8,521.19 | 2,823.75 | 5,697.44 | 566,919.79 | _____ |
| 71 | 04/01/19 | 8,521.19 | 2,851.99 | 5,669.20 | 564,067.80 | _____ |
| 72 | 05/01/19 | 8,521.19 | 2,880.51 | 5,640.68 | 561,187.29 | _____ |
| 73 | 06/01/19 | 8,521.19 | 2,909.32 | 5,611.87 | 558,277.97 | _____ |
| 74 | 07/01/19 | 8,521.19 | 2,938.41 | 5,582.78 | 555,339.56 | _____ |
| 75 | 08/01/19 | 8,521.19 | 2,967.79 | 5,553.40 | 552,371.77 | _____ |
| 76 | 09/01/19 | 8,521.19 | 2,997.47 | 5,523.72 | 549,374.30 | _____ |
| 77 | 10/01/19 | 8,521.19 | 3,027.45 | 5,493.74 | 546,346.85 | _____ |
| 78 | 11/01/19 | 8,521.19 | 3,057.72 | 5,463.47 | 543,289.13 | _____ |
| 79 | 12/01/19 | 8,521.19 | 3,088.30 | 5,432.89 | 540,200.83 | _____ |
| Subtotal: 1919 | | 102,254.28 | 35,106.63 | 67,147.65 | | |
| 80 | 01/01/20 | 8,521.19 | 3,119.18 | 5,402.01 | 537,081.65 | _____ |
| 81 | 02/01/20 | 8,521.19 | 3,150.37 | 5,370.82 | 533,931.28 | _____ |
| 82 | 03/01/20 | 8,521.19 | 3,181.88 | 5,339.31 | 530,749.40 | _____ |
| 83 | 04/01/20 | 8,521.19 | 3,213.70 | 5,307.49 | 527,535.70 | _____ |
| 84 | 05/01/20 | 8,521.19 | 3,245.83 | 5,275.36 | 524,289.87 | _____ |
| 85 | 06/01/20 | 8,521.19 | 3,278.29 | 5,242.90 | 521,011.58 | _____ |
| 86 | 07/01/20 | 8,521.19 | 3,311.07 | 5,210.12 | 517,700.51 | _____ |
| 87 | 08/01/20 | 8,521.19 | 3,344.18 | 5,177.01 | 514,356.33 | _____ |
| 88 | 09/01/20 | 8,521.19 | 3,377.63 | 5,143.56 | 510,978.70 | _____ |
| 89 | 10/01/20 | 8,521.19 | 3,411.40 | 5,109.79 | 507,567.30 | _____ |
| 90 | 11/01/20 | 8,521.19 | 3,445.52 | 5,075.67 | 504,121.78 | _____ |
| 91 | 12/01/20 | 8,521.19 | 3,479.97 | 5,041.22 | 500,641.81 | _____ |
| Subtotal: 1920 | | 102,254.28 | 39,559.02 | 62,695.26 | | |
| 92 | 01/01/21 | 8,521.19 | 3,514.77 | 5,006.42 | 497,127.04 | _____ |
| 93 | 02/01/21 | 8,521.19 | 3,549.92 | 4,971.27 | 493,577.12 | _____ |
| 94 | 03/01/21 | 8,521.19 | 3,585.42 | 4,935.77 | 489,991.70 | _____ |
| 95 | 04/01/21 | 8,521.19 | 3,621.27 | 4,899.92 | 486,370.43 | _____ |
| 96 | 05/01/21 | 8,521.19 | 3,657.49 | 4,863.70 | 482,712.94 | _____ |
| 97 | 06/01/21 | 8,521.19 | 3,694.06 | 4,827.13 | 479,018.88 | _____ |
| 98 | 07/01/21 | 8,521.19 | 3,731.00 | 4,790.19 | 475,287.88 | _____ |
| 99 | 08/01/21 | 8,521.19 | 3,768.31 | 4,752.88 | 471,519.57 | _____ |
| 100 | 09/01/21 | 8,521.19 | 3,805.99 | 4,715.20 | 467,713.58 | _____ |
| 101 | 10/01/21 | 8,521.19 | 3,844.05 | 4,677.14 | 463,869.53 | _____ |
| 102 | 11/01/21 | 8,521.19 | 3,882.49 | 4,638.70 | 459,987.04 | _____ |
| 103 | 12/01/21 | 8,521.19 | 3,921.32 | 4,599.87 | 456,065.72 | _____ |
| Subtotal: 1921 | | 102,254.28 | 44,576.09 | 57,678.19 | | |
| 104 | 01/01/22 | 8,521.19 | 3,960.53 | 4,560.66 | 452,105.19 | _____ |
| 105 | 02/01/22 | 8,521.19 | 4,000.14 | 4,521.05 | 448,105.05 | _____ |
| 106 | 03/01/22 | 8,521.19 | 4,040.14 | 4,481.05 | 444,064.91 | _____ |
| 107 | 04/01/22 | 8,521.19 | 4,080.54 | 4,440.65 | 439,984.37 | _____ |

108   05/01/22      8,521.19      4,121.35      4,399.84      435,863.02   _____

Budgets, Cash Flow & Loan                                      PAGE 004
01/01/90
                    L O A N   P A Y M E N T   S C H E D U L E

---

| | ---------Payment--------- | | --Portion of payment--- | | Principal | Date |
| # | Date | Amount | Principal | Interest | balance | paid |
|---|---|---|---|---|---|---|
| 109 | 06/01/22 | 8,521.19 | 4,162.56 | 4,358.63 | 431,700.46 | _____ |
| 110 | 07/01/22 | 8,521.19 | 4,204.19 | 4,317.00 | 427,496.27 | _____ |
| 111 | 08/01/22 | 8,521.19 | 4,246.23 | 4,274.96 | 423,250.04 | _____ |
| 112 | 09/01/22 | 8,521.19 | 4,288.69 | 4,232.50 | 418,961.35 | _____ |
| 113 | 10/01/22 | 8,521.19 | 4,331.58 | 4,189.61 | 414,629.77 | _____ |
| 114 | 11/01/22 | 8,521.19 | 4,374.89 | 4,146.30 | 410,254.88 | _____ |
| 115 | 12/01/22 | 8,521.19 | 4,418.64 | 4,102.55 | 405,836.24 | _____ |
| Subtotal: 1922 | | 102,254.28 | 50,229.48 | 52,024.80 | | |
| 116 | 01/01/23 | 8,521.19 | 4,462.83 | 4,058.36 | 401,373.41 | _____ |
| 117 | 02/01/23 | 8,521.19 | 4,507.46 | 4,013.73 | 396,865.95 | _____ |
| 118 | 03/01/23 | 8,521.19 | 4,552.53 | 3,968.66 | 392,313.42 | _____ |
| 119 | 04/01/23 | 8,521.19 | 4,598.06 | 3,923.13 | 387,715.36 | _____ |
| 120 | 05/01/23 | 8,521.19 | 4,644.04 | 3,877.15 | 383,071.32 | _____ |
| 121 | 06/01/23 | 8,521.19 | 4,690.48 | 3,830.71 | 378,380.84 | _____ |
| 122 | 07/01/23 | 8,521.19 | 4,737.38 | 3,783.81 | 373,643.46 | _____ |
| 123 | 08/01/23 | 8,521.19 | 4,784.76 | 3,736.43 | 368,858.70 | _____ |
| 124 | 09/01/23 | 8,521.19 | 4,832.60 | 3,688.59 | 364,026.10 | _____ |
| 125 | 10/01/23 | 8,521.19 | 4,880.93 | 3,640.26 | 359,145.17 | _____ |
| 126 | 11/01/23 | 8,521.19 | 4,929.74 | 3,591.45 | 354,215.43 | _____ |
| 127 | 12/01/23 | 8,521.19 | 4,979.04 | 3,542.15 | 349,236.39 | _____ |
| Subtotal: 1923 | | 102,254.28 | 56,599.85 | 45,654.43 | | |
| 128 | 01/01/24 | 8,521.19 | 5,028.83 | 3,492.36 | 344,207.56 | _____ |
| 129 | 02/01/24 | 8,521.19 | 5,079.11 | 3,442.08 | 339,128.45 | _____ |
| 130 | 03/01/24 | 8,521.19 | 5,129.91 | 3,391.28 | 333,998.54 | _____ |
| 131 | 04/01/24 | 8,521.19 | 5,181.20 | 3,339.99 | 328,817.34 | _____ |
| 132 | 05/01/24 | 8,521.19 | 5,233.02 | 3,288.17 | 323,584.32 | _____ |
| 133 | 06/01/24 | 8,521.19 | 5,285.35 | 3,235.84 | 318,298.97 | _____ |
| 134 | 07/01/24 | 8,521.19 | 5,338.20 | 3,182.99 | 312,960.77 | _____ |
| 135 | 08/01/24 | 8,521.19 | 5,391.58 | 3,129.61 | 307,569.19 | _____ |
| 136 | 09/01/24 | 8,521.19 | 5,445.50 | 3,075.69 | 302,123.69 | _____ |
| 137 | 10/01/24 | 8,521.19 | 5,499.95 | 3,021.24 | 296,623.74 | _____ |
| 138 | 11/01/24 | 8,521.19 | 5,554.95 | 2,966.24 | 291,068.79 | _____ |
| 139 | 12/01/24 | 8,521.19 | 5,610.50 | 2,910.69 | 285,458.29 | _____ |
| Subtotal: 1924 | | 102,254.28 | 63,778.10 | 38,476.18 | | |
| 140 | 01/01/25 | 8,521.19 | 5,666.61 | 2,854.58 | 279,791.68 | _____ |
| 141 | 02/01/25 | 8,521.19 | 5,723.27 | 2,797.92 | 274,068.41 | _____ |
| 142 | 03/01/25 | 8,521.19 | 5,780.51 | 2,740.68 | 268,287.90 | _____ |
| 143 | 04/01/25 | 8,521.19 | 5,838.31 | 2,682.88 | 262,449.59 | _____ |
| 144 | 05/01/25 | 8,521.19 | 5,896.69 | 2,624.50 | 256,552.90 | _____ |
| 145 | 06/01/25 | 8,521.19 | 5,955.66 | 2,565.53 | 250,597.24 | _____ |
| 146 | 07/01/25 | 8,521.19 | 6,015.22 | 2,505.97 | 244,582.02 | _____ |
| 147 | 08/01/25 | 8,521.19 | 6,075.37 | 2,445.82 | 238,506.65 | _____ |

148   09/01/25      8,521.19       6,136.12       2,385.07    232,370.53   _____

Budgets, Cash Flow & Loan                                                    PAGE 005
01/01/90
                    L O A N   P A Y M E N T   S C H E D U L E

| # | Date | Amount | Principal | Interest | Principal balance | Date paid |
|---|------|--------|-----------|----------|-------------------|-----------|
| | | | --Portion of payment--- | | | |
| 149 | 10/01/25 | 8,521.19 | 6,197.48 | 2,323.71 | 226,173.05 | _____ |
| 150 | 11/01/25 | 8,521.19 | 6,259.46 | 2,261.73 | 219,913.59 | _____ |
| 151 | 12/01/25 | 8,521.19 | 6,322.05 | 2,199.14 | 213,591.54 | _____ |
| Subtotal: 1925 | | 102,254.28 | 71,866.75 | 30,387.53 | | |
| 152 | 01/01/26 | 8,521.19 | 6,385.27 | 2,135.92 | 207,206.27 | |
| 153 | 02/01/26 | 8,521.19 | 6,449.13 | 2,072.06 | 200,757.14 | |
| 154 | 03/01/26 | 8,521.19 | 6,513.62 | 2,007.57 | 194,243.52 | |
| 155 | 04/01/26 | 8,521.19 | 6,578.75 | 1,942.44 | 187,664.77 | |
| 156 | 05/01/26 | 8,521.19 | 6,644.54 | 1,876.65 | 181,020.23 | |
| 157 | 06/01/26 | 8,521.19 | 6,710.99 | 1,810.20 | 174,309.24 | |
| 158 | 07/01/26 | 8,521.19 | 6,778.10 | 1,743.09 | 167,531.14 | |
| 159 | 08/01/26 | 8,521.19 | 6,845.88 | 1,675.31 | 160,685.26 | |
| 160 | 09/01/26 | 8,521.19 | 6,914.34 | 1,606.85 | 153,770.92 | |
| 161 | 10/01/26 | 8,521.19 | 6,983.48 | 1,537.71 | 146,787.44 | |
| 162 | 11/01/26 | 8,521.19 | 7,053.32 | 1,467.87 | 139,734.12 | |
| 163 | 12/01/26 | 8,521.19 | 7,123.85 | 1,397.34 | 132,610.27 | |
| Subtotal: 1926 | | 102,254.28 | 80,981.27 | 21,273.01 | | |
| 164 | 01/01/27 | 8,521.19 | 7,195.09 | 1,326.10 | 125,415.18 | |
| 165 | 02/01/27 | 8,521.19 | 7,267.04 | 1,254.15 | 118,148.14 | |
| 166 | 03/01/27 | 8,521.19 | 7,339.71 | 1,181.48 | 110,808.43 | |
| 167 | 04/01/27 | 8,521.19 | 7,413.11 | 1,108.08 | 103,395.32 | |
| 168 | 05/01/27 | 8,521.19 | 7,487.24 | 1,033.95 | 95,908.08 | |
| 169 | 06/01/27 | 8,521.19 | 7,562.11 | 959.08 | 88,345.97 | |
| 170 | 07/01/27 | 8,521.19 | 7,637.73 | 883.46 | 80,708.24 | |
| 171 | 08/01/27 | 8,521.19 | 7,714.11 | 807.08 | 72,994.13 | |
| 172 | 09/01/27 | 8,521.19 | 7,791.25 | 729.94 | 65,202.88 | |
| 173 | 10/01/27 | 8,521.19 | 7,869.16 | 652.03 | 57,333.72 | |
| 174 | 11/01/27 | 8,521.19 | 7,947.85 | 573.34 | 49,385.87 | |
| 175 | 12/01/27 | 8,521.19 | 8,027.33 | 493.86 | 41,358.54 | |
| Subtotal: 1927 | | 102,254.28 | 91,251.73 | 11,002.55 | | |
| 176 | 01/01/28 | 8,521.19 | 8,107.60 | 413.59 | 33,250.94 | |
| 177 | 02/01/28 | 8,521.19 | 8,188.68 | 332.51 | 25,062.26 | |
| 178 | 03/01/28 | 8,521.19 | 8,270.57 | 250.62 | 16,791.69 | |
| 179 | 04/01/28 | 8,521.19 | 8,353.27 | 167.92 | 8,438.42 | |
| 180 | 05/01/28 | 8,522.80 | 8,438.42 | 84.38 | .00 | |
| Subtotal: 1928 | | 42,607.56 | 41,358.54 | 1,249.02 | | |
| Grand totals: | | 1,533,815.81 | 710,000.00 | 823,815.81 | | |

SECURITY AGREEMENT

THIS AGREEMENT made the _2_ day of May, 2013, under the laws of the State of New York between **MONTEZUMA MEXICAN RESTAURANT INC.**, (an organization registered in the State of New York) with offices at 119 West Kingsbridge Road, Bronx, NY 10468 ("Debtor") and **JOSE JAQUEZ c/o Maximo Figueredo, Esq.** with offices at 37-31 76th Street, Jackson heights, NY 11372 ("Secured Party"), agree as follows:

1.   **GRANT OF SECURITY INTEREST.** In consideration of the covenants and agreements contained herein, and financial accommodations given, to be given, or continued, Debtors hereby grant to Secured Party a continuing security interest in all of the Collateral described in paragraph 2 hereof.  The security interest created by this Agreement attaches to the Collateral immediately upon execution hereof and secures payment of that certain Promissory Note for the principal amount **SEVEN HUNDRED TEN THOUSAND ($710,000.00) Dollars** dated May 2, 2013 ("Note"), this Security Agreement and performance by Debtor of all other Agreements between Debtor and Secured Party in connection with the loan, together with all debts, obligations, and liabilities now or here-after existing, absolute or contingent, and any further advances owing to Secured Party by Debtors (collectively "Indebtedness").

The parties agree that the terms of the Promissory Note are:

a)   Payments will commence on June 15, 2013, with debtor paying the sum of Eight Thousand Five Hundred Twenty One ($8,521.29) dollars and twenty nine cents, which includes principal and interest at rate of twelve (12%) percent per annum, and the like sum monthly thereafter for eighty four (84) consecutive months when the remaining principal due together with accrued interest shall become due and payable on June 15, 2020.

b)   The Promissory Note will be a balloon note.  The monthly payments are based on an amortization schedule (that is attached to the Promissory Note) of 180 months, but the remaining balance on the note becomes due and payable on June 15, 2020. The principal remaining unpaid at maturity pursuant to the terms of the amortization schedule would be $524,289.87

c)   However, notwithstanding that the monthly sum is $8,521.29, in the event that the Debtor pays no monthly sums less than Five Thousand Five Hundred ($5,500.00) to the Secured Party, then the Debtor will not be in material default of the note, and the principal remaining at maturity date of June 15, 2020 will be recalculated for pay-off amount due to Secured Party.

d)   If the Debtor fails by making monthly payments of less than the amounts stated above, for more than sixty (60) days, and no extension agreement for said payments has been executed between the parties, then the Debtor will be in

1



material default of the Promissory Note, and after written notice to debtor by certified mail, return receipt requested, with a copy of said notice to debtor's attorney by regular mail, and demand to cure continues for a period of ten (10) days, then, at the option of the holder of said note, the entire unpaid balance of principal, plus interest at the rate of twenty four (24%) percent per annum from date of default until date of payment, shall forthwith become due and payable. The failure to assert this right shall not be deemed a waiver thereof.

e)    The holder of the note shall be entitled to reasonable attorney's fees in the event of a default and a collection action is commenced against Debtor.

f)    In the event that prior to the balloon date of the note, the Debtor obtains an extension of lease for premises 119 West Kingsbridge Road, Bronx, New York, or the Debtor transfers to a new location, then the parties agree that the balloon note payment due on June 15, 2020 will be extended by a new written agreement to be signed between the parties, wherein principal and interest will be paid to the Secured Party by Debtor for a period of no less than the extension term of lease or new location term of lease, and an interest rate of no more than twelve (12%) percent.

In addition, Debtor shall deliver to the Secured Party a collateral assignment of Lease with Landlord's consent.

2.    **COLLATERAL DESCRIPTION.** All of Debtor's right, title and interest to the Debtor's assets, including the Leasehold, located at: 119 West Kingsbridge Road, Bronx, New York 10468, (see Exhibit A) attached hereto and made a part thereof.

3.    **WARRANTIES AND RESPRESENTATIONS.** Debtor warrants and represents that:

3.1    **Debtor's Title.** Except us specified herein, Debtors have, or upon acquisition shall have, title to all Collateral and no other person, entity, agency, or government has or purports to have, or upon acquisition shall have, any rights, title, lien, encumbrance, adverse claim, or interest in any Collateral.

3.2    **Debtor's Authority.** Debtors have authority to enter into this Agreement and any person signing it on behalf of the Debtors' have been duly authorized to execute this Agreement for the Debtors.

2

3.3    Information.    Any and all information now or hereafter supplied to Secured Party by Debtor, or at Debtor's request or instruction, is correct.

4.    **COVENANTS AND AGREEMENTS.**  Debtors covenant and agree that:

4.1    Violation of Law.  Debtor's shall not use the Collateral in violation of any applicable statutes, regulations or ordinances.

4.2    Additional Information. Debtor's shall, upon Secured Party's demand, establish the correctness of any information supplied to Secured Party and shall promptly notify Secured Party of any changes in any information supplied to Secured Party and of any change in Debtors' principal place of business or mailing address, and of any change of address to which notices should be sent.

4.3    Additional Documents.    Debtor's shall execute any additional agreements, assignments, or documents that may be deemed necessary or advisable by Secured Party to perfect Secured Party's security interest in the Collateral and to effectuate the purpose of this Agreement. **You are authorized to file a Financing Statement.**

4.4    Sale, Lease or Disposition.  Except in the ordinary course of its business, Debtor's shall not, without written consent of Secured Party, sell, contract to sell, lease, encumber, or dispose of the Collateral until the Indebtedness to Secured Party has been completely discharged.

4.5    Defense of Title.  Debtor's, at this own cost and expense, shall appear in and defend any action or proceeding which may affect the Secured Party's security interest in or Debtors' title to any Collateral.

4.6    No Event of Default.  Debtor's execution and delivery of this Security Agreement will not violate any law or agreement-governing Debtor or to which Debtor is a party.

5.    **REMEDIES.**  Debtor understands and agrees that in the event that: (a) Any warranty or representation is false (b) Any covenant or agreement is violated; or (c) the payment is impaired; the performance of any covenant or agreement is impaired, or the

order of priority of the security interest is impaired, Secured Party, in addition to any remedies provided by law or this Agreement, and to the extent provided by law, may:

      5.1    <u>Expenses.</u> Incur expenses (including reasonable attorneys' fees, legal expenses and costs) to exercise any right or power under this Agreement.

      5.2    <u>Default.</u>  Declare, on written notice, certified mail, return receipt requested, to the Debtor that a default has occurred.

      5.3    Notice.  Notify other interested persons or entitles of the default, acceleration, and other actions of Secured Party.

6.    **TERMINATION.**  Upon Debtor's complete and absolute satisfaction and payment of the Indebtedness and all other amounts due Secured Party hereunder, Secured Party shall take such action as may be necessary to terminate Secured Party's interest in the Collateral including but not limited to, executing Secretary of State form UCC-3.

7.    <u>**RULES TO CONSTRUE AGREEMENT.**</u>

      7.1    <u>Time of Essence.</u>  Time is of the essence of this Agreement.

      7.2    <u>Waiver.</u> Secured Party's acceptance of partial or delinquent payments or failure of Secured Party to exercise any right or remedy shall not be a waiver of any obligation of Debtor or right of Secured Party nor constitute a modification of this Agreement nor constitute a waiver of any other similar default subsequently occurring.

      7.3    <u>Entire Agreement.</u>  This Security Agreement contains the entire agreement between Secured Party and Debtor.

      7.4    <u>Assignment etc.</u>  The provisions of this Agreement are hereby made applicable to and shall insure to the benefit of Secured Party's successors and assigns and bind Debtors' heirs, legatees, devisees, administrators, executors, successors, and assigns.

4

7.5    <u>Notices.</u> Any notice under this agreement shall be in writing, and any written notice or other document shall be deemed to have been duly given if the document is deposited in the United States mail, certified mail, return receipt requested, and addressed to the parties at the addresses set forth below or at the most recent address specified by addressee through written notice under this provision.

7.6    <u>Severability.</u> If any provision of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, the remainder of the Agreement shall continue in full force and effect and shall in no way be impaired or invalidated.

7.7    <u>Governing Law.</u> The rights and obligations of the parties and the interpretation and performance of this Agreement shall be governed by the laws of the State of New York.

Dated: May 2, 2013

**DEBTOR**                                          **SECURED PARTY**

MONTEZUMA MEXICAN RESTAURANT INC.

By: _____          _____
    MAGDALENA DOMINGUEZ, Pres.          JOSE JAQUEZ

5

## EXHIBIT A

"Included Assets" as defined below:

More specifically:

(a)    all machinery, equipment, tools, furniture, furnishings, leasehold improvements, goods and any rights under lease to use such machinery, furnishings and equipment and those items of personal property and other tangible personal property.

(b)    Inventory

(c)    all other assets of the Seller, except those excluded under 1.1.2.

(d)    Leasehold.

6

## COLLATERAL ASSIGNMENT OF LEASE

FOR SECURITY PURPOSES ONLY

TO TAKE EFFECT ON DEFAULT OF ASSIGNOR TO LANDLORD OR ASSIGNEE

*DATE:*   February         , 2013

ASSIGNOR   **MONTEZUMA MEXICAN RESTAURANT INC.**
119 West Kingsbridge Road
Bronx, NY 10468

*ASSIGNEE:*   **JOSE JAQUEZ**
543 Grant Terrace
Teaneck, New Jersey, 07666

*PREMISES:*   119 West Kingsbridge Road, Bronx, NY 10468

*LEASE ASSIGNED:*   Lease entered into on June 19,  2010 by and between, 2690 WEBB AVE. LLC., as Landlord and **MONTEZUMA MEXICAN RESTAURANT INC.**, as Tenant.

*CONSIDERATION:*   Assignor for the sum of Ten ($10.00) Dollars and other good in valuable consideration paid in hand to the Assignor receipt of which is acknowledged, Assignor agrees as follows:

*ASSIGNMENT:*   Assignor assigns to the Assignee all Assignor's right, title and interest in a) the Lease, and b) the security deposit, if any, stated in the Lease. TO TAKE EFFECT SHOULD ASSIGNOR DEFAULT ON LOAN DOCUMENTS EXECUTED WITH ASSIGNEE.

*ASSIGNOR'S STATEMENTS:*   Assignor states that Assignor has the right to assign this Lease and that the premises are free and clear of any judgments, executions, liens, taxes and assessments. Assignee does not by its acceptance hereof undertake any responsibility for the performance of Assignor's obligations under the Lease.

*ASSIGNEE'S RIGHT TO SUBLET*   The Landlord acknowledges that it has been informed that **JOSE JAQUEZ**, has made a substantial monetary investment with the Assignor herein and retains a security interest in the operation of the restaurant. Landlord acknowledges that personal guarantee of Jose Cepeda is cancelled and void.
The landlord hereby grant **JOSE JAQUEZ**, the right to assign with the consent of the landlord but without the payment of any additional processing fees, or security payments, to qualified operators capable of operating a restaurant. In the event the operators fail to perform or comply with the terms and conditions, as required by **JOSE JAQUEZ**, **JOSE JAQUEZ** shall have the right to replace said operator with other qualified operators to assure the operation of this store.

**JOSE JAQUEZ** will notify the landlord in writing in the event of any replacement of a restaurant operator. Such notice shall be given to landlord within two weeks after placement of the new restaurant operator and shall set forth the name of said restaurant operator and his business office address and telephone number as well as any other information landlord may reasonably request.

Nothing herein is intended to in any way modify or diminish the obligations of the tenant under the lease agreement, which is the subject of this assignment.

Upon any default in the Lease by Tenant, which shall also be a default in the loan,

Assignee have the right to cure any Lease default without assuming liability under the Lease and to arrange for an assignment of the Lease to an assignee/operator subject to the Landlord's right to approve such assignment, not to be unreasonably withheld, and with the assignee assuming the Lease.  Assignee shall have the right to arrange for such an assignment upon the default by Tenant on its obligation to **JOSE JAQUEZ.**  Assignee shall have fifteen  (15) days after receipt of a notice from Landlord of a default by Tenant in the payment of current rent within which to cure such default, and so long as the Assignee shall pay the arrearages in rent and shall cause future rental payments to be made on a current basis, Assignee shall have the right to proceeds to arrange for an assignment of the Lease provided all defaults under the Lease relating to past due rent or other sums due and all obligations relating to the Premises and its use and occupation are cured within twenty (20) days of such notice of Lease default.

*SUCCESSORS:*          This assignment is binding on all parties who lawfully succeed to the rights or take the place of the Assignor or Assignee.

The Assignor and Assignee have signed this Assignment as of the date first above written.


Assignor:


**MONTEZUMA MEXICAN RESTAURANT INC.**

By: _____

**MAGDALENA DOMINGUEZ, President**


Assignee:


_____

**JOSE JAQUEZ**

Landlord acknowledges personal
guarantee of Jose Cepeda cancelled and void.
Consented to and approved by the Landlord;
2690 WEBB AVE. LLC.

BY: _____